**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRITZ & BIANCULLI, LLC, d/b/a Fritz Bianculli**, | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action** |
| | : | |
| **v.** | : | **No. 24-cv-4741-JMY** |
| | : | |
| **PATRICK MCCABE**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**<u>MEMORANDUM</u>**

Younge, J.                                                    February 13, 2025

## I.    INTRODUCTION

Currently before this Court are Defendants' Motions to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 18 & 19). On December 11, 2024, the Court heard oral arguments on these issues. For the reasons set forth in this Memorandum, Defendants' Motions to Dismiss is denied in part and granted in part.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In 2020 and 2021, Fritz Bianculli, a law firm in Philadelphia, hired Holland & Knight, another law firm with a Philadelphia office, to represent them in two employment law matters. (Plaintiff's First Amended Complaint ("FAC") ¶¶ 4, 6, 9-10; FAC, Exhibit A). Holland & Knight and Fritz Bianculli had a valid and binding contract regarding the terms of the representation (the "Engagement Letter"). (FAC ¶ 130). These cases were relegated to Holland & Knight's employment law team and primarily handled by Holland & Knight Partner, Valerie Brown. (FAC ¶¶ 11-13). Defendants McCabe, Donohue, and Berg were attorneys at Holland &

Knight during this period of representation, but were not staffed on the team handling Fritz Bianculli's cases. (FAC ¶¶ 14-28). At some point during this relevant time period, Defendant McCabe joined the partnership at Holland & Knight. (FAC ¶ 17).

The Terms of Engagement ("Terms"), attached to the Engagement Letter, outlines the procedures that Holland & Knight and their attorneys were to follow in managing Fritz Bianculli's files. (FAC, Ex. A, Holland & Knight LLP Terms of Engagement ("Terms")). First, "[a]s a matter of professional responsibility," the Terms acknowledge that Holland & Knight is "required to hold confidential all information relating to the representation of [their] clients." (Terms, p. 1). Accordingly, Holland & Knight committed itself to "follow[ing] applicable legal ethics rules with regard to… protection of confidential information." (Terms, p. 1). That said, the Terms also describes how Fritz Bianculli's files would be integrated into Holland & Knights' firm-wide document management system:

> **Knowledge Management Tool:** In order to better and more economically serve our clients, we have implemented a document search engine that will allow us to search the firm's institutional work product to determine whether there exist documents created for one client that can be used as a starting point for the preparation for new documents for the clients. Documents that are subject to ethical wall restrictions, have extraordinary confidentiality requirements, or contain sensitive information will not be included in this system.

(Terms, p. 4). Fritz Bianculli relied on these terms when it shared "unrestrained communications" and their files with Holland & Knight. (FAC ¶ 141).

Throughout 2021, as Holland & Knight represented Fritz Bianculli, Defendant McCabe accessed files from the Fritz Bianculli cases stored at Holland & Knight on four occasions. (FAC ¶ 31). Months later, Kirsty McCabe, an associate employed by Fritz Bianculli, filed for divorce from Defendant McCabe in March 2022. (FAC ¶ 41). During the divorce proceedings, Defendant McCabe revealed that he accessed the Fritz Bianculli files to collect information on Ms.

McCabe's income and Plaintiff's client files. (FAC ¶ 45). He also indicated that he accessed, read, monitored, and recorded Fritz Bianculli's law firm email server by deciphering Ms. McCabe's password and login information for her work laptop. (FAC ¶¶ 46-48).

Then, on July 20, 2022, Ms. McCabe obtained a temporary restraining order against Defendant McCabe. ("First Restraining Order"). (FAC ¶¶ 52-55; 57-58). Holland & Knight allegedly took no action to identify a conflict following the First Restraining Order. (FAC ¶ 60). Around a year later, on June 10, 2023, Ms. McCabe filed for another temporary restraining order against Defendant McCabe ("Second Restraining Order"). (FAC ¶ 65). Thereafter, on July 18, 2023, following the filing of the Second Restraining Order, James DelBello, a Holland & Knight partner and head of their ethical compliance for the Philadelphia office, contacted Fritz Bianculli and informed them that their representation would be terminated due to conflicts of interests. (FAC ¶¶ 66 & 80).

During this period, and sometime after, Defendant McCabe continued to access the Fritz Bianculli case files stored at Holland & Knight, including on May 11, 2022, August 29, 2022, July 24, 2023, and December 30, 2023. (FAC ¶ 31). Defendant Berg accessed the files on December 28, 2023 and allegedly exported them to an unknown location. Then, well into 2024, Defendant Donohue accessed the files on February 26, 2024, February, 27, 2024, and March 13, 2024. (FAC ¶ 37). Defendant McCabe allegedly directed or encouraged Defendants Donohue and Berg to access the files. (FAC ¶¶ 93-94). According to the FAC, Holland & Knight did little or nothing to safeguard Fritz Bianculli's files from Defendant McCabe and others that could have acted on his behest. (FAC ¶ 68).

Fritz Bianculli claims that it suffered financial and reputational damages because of Defendants' actions. (FAC ¶ 102). Specifically, the firm alleges that the misappropriation of their

files caused their files to "los[e] the commercial value that they derive[d] from their confidentiality." (FAC ¶ 123). According to Fritz Bianculli, their firm derives value from its ability to maintain confidentiality, so the alleged disruption of said confidentiality would "shake the trust of potential clients." (FAC ¶ 124). Further, following the alleged incidents, the firm obtained cybersecurity insurance projected to cost over $10,000 annually. (FAC ¶ 98) In the process of obtaining such insurance, Fritz Bianculli revealed Defendants' alleged actions to its carrier, which, according to their carrier, made the premiums higher than they otherwise would have been. (FAC ¶ 99).

On or about August 20, 2024, Plaintiff filed a complaint in State Court against Defendants. (Notice of Removal ("Notice") ¶ 4). Defendant McCabe, with the consent of all other Defendants, removed the action to this Court under 28 U.S.C. § 1441(a) on September 9, 2024. (Notice ¶¶ 12-14). Thereafter, on October 7, 2024, Plaintiff amended their complaint and filed the FAC at issue. (FAC). There, Plaintiffs allege that Defendants McCabe, Donohue, and Berg unlawfully accessed Plaintiff's files and Holland & Knight failed to protect said files, violating their contractual, common law, and statutory duties. (FAC ¶ 1). Later, on October 21, 2024, Defendants filed the present Motions to Dismiss and Defendant McCabe filed a Motion to Strike. On December 13, 2024, this Court granted in part and denied in part Defendant McCabe's Motion to Strike the FAC (ECF No. 35).

## III.    LEGAL STANDARD

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). All well-pleaded allegations in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F. 3d 521, 526 (3d. Cir. 2009). Thus, this Court must examine Plaintiffs' claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

## IV.    DISCUSSION

Defendants present a series of arguments in their Motions to Dismiss aimed at demonstrating that Plaintiff has failed to sufficiently state a claim. This Court will begin by examining Plaintiff's claims under federal law (Counts III and IV), followed by an analysis of their claims under state law (Counts I, II, and V).

### A.    Federal Claims

The FAC includes a Computer Fraud and Abuse Act ("CFAA") claim (Count III) and a Stored Communications Act ("SCA") claim (Count IV) against all Defendants.

#### i.    *Computer Fraud and Abuse Act*

Plaintiff alleges that Defendants violated the CFAA, which prohibits someone from "intentionally accesses[ing] a computer without authorization or exceed[ing] authorized access,

and thereby obtains… information from a protected computer." 18 U.S.C. § 1030(a)(2). To state a claim under the CFAA, Plaintiff must plead that Defendants: "(1) accessed a protected computer; (2) without authorization or exceeded authorized access; (3) knowingly and with an intent to defraud; (4) obtained something of value; and (5) caused damage or loss to the plaintiff in excess of $5,000 in a one-year period." *Contour Data Sols. LLC v. Gridforce Energy Mgmt. LLC,* No. 20-3241, 2024 WL 3970455, at *17 (E.D. Pa. Aug. 28, 2024). Defendants challenge Plaintiff's ability to sufficiently plead a claim under the CFAA on two grounds: authorization and loss. (Defendant McCabe's Motion to Dismiss the Amended Complaint, ECF No. 18 ("Def. McCabe's Brief"), p. 8; Defendants Holland & Knight, Donohue, and Berg's Motion to Dismiss, ECF No. 19-1 ("Def. H & K's Brief"), p. 13). Because Defendants only challenge these two requirements of the CFAA claim, this Court will not address the other three provisions.

### 1. Authorized Access

A defendant's "liability under both the 'without authorization' clause and the 'exceeds authorized access' clause 'stems from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system.'" *Contour Data Sols. LLC,* 2024 WL 3970455, at *17 (citing *Van Buren v. United States*, 593 U.S. 374, 390 (2021)). This straightforward determination of authorization is not concerned with "circumstances and purpose of access." *Contour Data Sols. LLC,* 2024 WL 3970455, at *17 (citing *Van Buren v. United States*, 593 U.S. at 395-96). Therefore, even where a defendant's access is led by a "improper motive"—one that could satisfy the "intent requirement"—the CFAA "does not cover those who… [access] information that is otherwise available to them." *Van Buren*, 593 U.S. at 378, 395 ("[T]hat [intent] requirement would do nothing for those who intentionally use their computers in a way their 'job or policy prohibits.'").

In this case, Plaintiff has sufficiently plead facts to indicate that Defendants McCabe, Donohue, and Berg either did not have authorization or exceeded authorization to access Plaintiff's files. Through their representation, Plaintiff provided Holland & Knight their files, which were then stored in the Holland & Knight System. According to the Terms of Engagement, Plaintiff was informed that their files would be included in Holland & Knight's "Knowledge Management Tool," which would make the files searchable and available for use in serving other clients. However, if the documents were "subject to ethical wall restrictions, have extraordinary confidentiality requirements, or contain sensitive information," then they would "not be included in this system." Defendants Holland & Knight, Donohue, and Berg argue that their possession of the files and the Terms of Engagement indicate that they had authorized access to said files. While the Terms of Engagement could indicate that Defendants had authorized access to Plaintiff's files during their representation, whether the access was authorized after Holland & Knight terminated their "representation due to conflicts of interest" is unclear at this stage in the litigation. (FAC ¶ 66). Because Defendants McCabe, Donohue, and Berg allegedly accessed Plaintiff's files after Holland & Knight's representation was terminated, Plaintiff has pled sufficient facts to demonstrate that they are not authorized users.[1]

On the other hand, Plaintiff has not demonstrated that Defendant Holland & Knight did not have authorization. Defendant Holland & Knight claims that they "cannot be liable under the CFAA for accessing Employment Case Files on its own system." This issue was confronted in *Dresser-Rand Co. v. Jones*, where a defendant "only… viewed and edited [the plaintiff's]

---

[1] Defendant McCabe does not contest whether he is an unauthorized user of Kristy McCabe's work email, so this Court does not analyze this issue.

documents on his own computer that he received via e-mail," leading the court to dispose of the CFAA claims against this defendant because "he never accessed [the plaintiff's] computers." 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013). Here, Plaintiff's allegations against Defendant Holland & Knight only concern files that were stored on the Holland & Knight system, so their actions would not implicate the CFAA because they own the system that was accessed. *See Christie v. Nat'l Inst. for Newman Stud.*, No. 16-6572, 2019 WL 1916204, at *7 (D.N.J. Apr. 30, 2019) ("[H]e cannot, as a threshold matter, accuse Defendants of violating the CFAA by accessing computers that they own.").

Consequently, any attempt at amendment on this issue would be futile because Defendant Holland & Knight's status as an authorized user of its own system is well established. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."). For this reason, Plaintiff's CFAA claim (Count III) is dismissed with prejudice against Defendant Holland & Knight.

### 2. Loss

Now, because the claim is dismissed with prejudice against Defendant Holland & Knight, this analysis of "loss" under the CFAA will only pertain to the remaining defendants—McCabe, Donohue, and Berg. A plaintiff can recover damages through a civil suit if a defendant's violation of Section 1030(a)(2) causes "loss to [to Plaintiff] during any 1–year period ... aggregating at least $5,000 in value[.]" *Id.* §§ 1030(c)(4)(A)(i)(I), 1030(g). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its

condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

The plaintiff's "loss" must be "costs caused by harm to computer data, programs, systems, or information services." *Van Buren*, 593 U.S. at 391 (citing 18 U.S.C. § 1030(e)(11)). This definition "focus[es] on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data. Limiting… 'loss' in this way makes sense in a scheme 'aimed at preventing the typical consequences of hacking.'" *Van Buren*, 593 U.S. at 392. And pertinent for this case, "[n]umerous district court decisions in the Third Circuit have held that to fall within this definition of 'loss,' the 'alleged loss must be related to the impairment or damage to a computer or computer system.'" *Sealord Holdings, Inc. v. Radler*, No. 11-6125, 2012 WL 707075, at *4 (E.D. Pa. Mar. 6, 2012) (collecting cases).

Here, Plaintiff has not suffered a "loss" that would implicate the CFAA. Plaintiff contends that it suffered the following harms: (1) substantial costs from obtaining cybersecurity insurance; (2) loss of the "commercial value" that Plaintiff's files derive from their confidentiality; and (3) losses relating to the damage assessment that Plaintiff conducted. These first two harms, however, are not the type of technological harms that courts have found that the CFAA covers. *See, e.g., Gap Properties, LLC v. Cairo*, No. 19-20117, 2022 WL 17250572, at *5 (D.N.J. Nov. 28, 2022) ("Courts have found damage, for example, where a defendant has inflicted some type of impairment on the computer, such as corruption of files, deletion of data, or installation of unauthorized software.") (internal citations omitted). First, Cybersecurity insurance would protect Plaintiff from a potential cybersecurity breach in the future, so it is not a "reasonable cost… of responding to an offense." 18 U.S.C. § 1030(e)(11). Because the insurance is a "prophylactic measure[ that is] not remedial in nature[, it] therefore do[es] not qualify as

'losses' within the meaning of the CFAA." *Ryanair DAC v. Booking Holdings Inc.*, No. 20-1191, 2024 WL 3732498, at \*14 (D. Del. June 17, 2024)

Second, Plaintiff's alleged reputational damages and the loss of value of its files that it derived from their confidentiality are not the type of "technological harms" that are considered "loss" under the CFAA. *See Van Buren*, 593 U.S. at 391–92 ("The statutory definitions of "damage" and "loss" thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data."); *Goydos v. Rutgers, State Univ.*, No. 19-8966, 2024 WL 1329253, at \*8 (D.N.J. Mar. 28, 2024) ("Rutgers cannot recover under the CFAA for harm to its reputation or future recruitment."); *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 330 (M.D. Pa. 2014), *aff'd*, 958 F.3d 168 (3d Cir. 2020) ("The CFAA's definition of loss includes lost revenue incurred because of an interruption of service but does not include claims for lost business opportunities, damaged reputation, and other missed revenue opportunities." (citing 18 U.S.C. § 1030(e)(11)) (collecting cases)). Frankly, these injuries are not related to the "impairment or damage to a computer or computer system." *Sealord Holdings, Inc*, 2012 WL 707075, at \*4 (internal citations omitted).

Next, the third loss alleged by Plaintiff, "losses relating to the damage assessment that they had to conduct after Defendants' unauthorized access of these materials," is not sufficiently plead under the *Twombly/Iqbal* standards. In *Gap Properties, LLC*, where a court considered a counterclaim under the CFAA, the court found that the defendant's "costs… to determine the full extent of the intrusion" were not sufficiently plead because the defendant failed to describe these efforts. *See* 2022 WL 17250572, at \*6. This failure, where the defendant was not in possession of the computer, led the court to conclude, "without more," that it could not "be plausibly alleged that the [d]efendants have incurred 'costs of forensic imaging, analysis, and review of the

Computer Systems' they do not possess or have access to." *Id.* In this case, with respect to the files that were accessed on the Holland & Knight system, Plaintiff does not provide any details of the damage assessment of said files. As such, similar to the defendants asserting a CFAA counterclaim in *Gap Properties, LLC*, Plaintiff has not plausibly alleged how they incurred costs from a damage assessment of files on a system that they do not own and do not have access to. This analysis, of course, does not implicate the plausibly alleged costs that Plaintiff incurred from a damage assessment of its system after Defendant McCabe's alleged access through Kristy McCabe's work email.

With respect to Plaintiff's alleged costs from a damage assessment that relate to Defendant McCabe's access to Kristy McCabe's work email, Defendant McCabe argues that this "loss" is insufficient under the CFAA because no "damage [was] done to [Plaintiff's] computer system." (Def. McCabe's Brief, p. 10) (citing *Advantage Ambulance Grp., Inc. v. Lugo*, No. 08-3300, 2009 U.S. Dist. LEXIS 26465, at *12-13 (E.D. Pa. Mar. 30, 2009)). Plaintiff alleges that Defendant McCabe accessed Kristy McCabe's computer and work email, but does not plead that their email system was damaged. The absence of this fact, according to Defendant McCabe, would require this Court to dismiss the CFAA claim because "mere unauthorized access" does "not constitute actionable damage[.]" (Def. McCabe's Brief, p. 11) (citing *Gap Properties, LLC*, 2022 WL 17250572, at *5). However, this requirement would contradict the definition of "loss" in the statute, as explained in *Ryanair DAC*:

> Because a "loss" under the CFAA is defined to include "any reasonable cost to any victim, including the cost of responding to an offense," 18 U.S.C. § 1030(e)(8), the term "loss" is best understood to include the cost of an investigation following a CFAA violation, even in instances in which the violation

> has not resulted in actual impairment of the protected computer or loss of data.
> Not only is that interpretation faithful to the definition of "loss," but it is consistent
> with the statutory scheme as a whole…

2024 WL 3732498, at *13. As such, under the statutory definition of "loss," the cost from a damage assessment is actionable under the CFAA absent damage to a computer. Further, the damage assessment in this case would be a technological harm because Plaintiff alleges that Defendant McCabe "regularly monitor[ed] and access[ed]" their email server, so the assessment is "reasonably necessary to respond to the offense, for example by identifying the perpetrator or the method by which the offender accessed the protected information." *Ryanair DAC,* 2024 WL 3732498, at *14.

Nevertheless, and crucial to pleading "loss" under the CFAA, Plaintiff does not plead that their losses that are covered under the CFAA "meet the minimum loss requirement of $5,000.00." *Brooks v. AM Resorts, LLC*, 954 F. Supp. 2d 331, 339 (E.D. Pa. 2013) (granting summary judgment on a CFAA claim because the plaintiff did not demonstrate that they met the requisite "loss" amount under the CFAA.); *see also Fontana v. Corry*, No. 10-1685, 2011 WL 4473285, at *10 (W.D. Pa. Aug. 30, 2011) ("Because it is impossible to ascertain from Plaintiffs' Complaint whether their loss, as defined by the CFAA, exclusive of damages, would exceed $5,000 in any one-year period… Plaintiffs' Complaint fails to adequately plead facts necessary to establish the minimum dollar value required to bring a claim under the CFAA.").

For all the above reasons, this Court finds that Plaintiff has not sufficiently pled facts to demonstrate that it suffered a cognizable loss of at least $5,000 in a one-year period. As such, Plaintiff's CFAA claim (Count III) is dismissed without prejudice with leave to amend against Defendants McCabe, Donohue, and Berg.

### ii.    *Stored Communications Act*

Next, Plaintiff alleges that Defendants violated the Stored Communications Act ("SCA"). (FAC ¶¶ 159-170). To state a claim under the SCA, Plaintiff must demonstrate that Defendants "(1) intentionally accesse[d] without authorization a *facility through which an electronic communication service is provided*; or (2) intentionally exceed[ed] an authorization to access that facility; and thereby obtain[ed], alter[ed], or prevent[ed] authorized access to a wire or electronic communication while it [was] in electronic storage in such system." *In re Google Inc.,* 806 F.3d 125, 145–46 (3d Cir. 2015) (emphasis added). The Third Circuit has explained that "the origin of the Stored Communications Act confirms that Congress crafted the statute to specifically protect information held by centralized communication providers." *In re Google Inc.,* 806 F.3d at 147.

Defendants argue that the Plaintiff failed to state a claim under the SCA because neither Plaintiff nor Holland & Knight are "facilities that provide an electronic communication service as defined under the SCA." (Def. McCabe's Brief, p. 12). While the SCA does not define "facility," it does define "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications," which the Third Circuit understood to "most naturally describe network service providers." *In re Google Inc.,* 806 F.3d 146 (citing 18 U.S.C. § 2510(15)). This includes "telephone companies, internet or e-mail service providers, and bulletin board services." *Walker v. Coffey*, 956 F.3d 163, 168 (3d Cir. 2020).

Here, the FAC alleges that (1) all Defendants participated in the unauthorized access of Plaintiff's files on Holland & Knight's servers; and (2) Defendant McCabe, without authorization, accessed Plaintiff's email servers through Ms. McCabe's work computer. This Court agrees that the FAC fails to allege sufficient facts to support that Holland & Knight is a

facility that provides an electronic communication service. The Holland & Knight server, where Plaintiff's files were maintained, are not covered under the SCA because "there is no evidence that [the] computer maintained any electronic communication service." *In re Google Inc*, 806 F.3d at 148 (internal quotations omitted). As articulated by the Third Circuit, "the Act clearly shows a specific congressional intent to deal with the particular problem of private communications in network service providers' possession," which is far from Plaintiff's allegations of unauthorized access into Holland & Knight's server. *Id.* at 147. On the other hand, the FAC alleges that Defendant McCabe accessed the Fritz Bianculli email server, indicating that Fritz Bianculli is a facility that provides an electronic communication service under the SCA. *See, e.g., Walker*, 956 F.3d at 168-169 (holding that Penn State is a facility under the SCA where the Penn State email server was accessed). Put more plainly, Fritz Bianculli's allegations about their email server converts Fritz Bianculli into a facility under the SCA. Therefore, the FAC only includes allegations that Defendant McCabe accessed a "facility"—Plaintiff's email server—but does not include similar allegations against Defendant's Holland & Knight, Donohue, and Berg. Because "[a]ccessing a facility as defined by section 2701 requires an intrusion into an electronic communication system," which the Holland & Knight servers are not, Defendants Holland & Knight, Donohue, and Berg's motion to dismiss Plaintiff's SCA claim is granted. *See id.* at 168. Amendment in this situation is futile because the allegations have established that Holland & Knight is not a "facility," so Plaintiff's SCA claim is dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.    State Claims**

The FAC includes a Breach of Fiduciary Duty claim (Count I) and Civil Conspiracy Claim (Count V) against all Defendants, and a Breach of Contract claim (Count II) against Defendant Holland & Knight.

### i. *Gist of the Action Doctrine*

Defendants Holland & Knight, Donohue, and Berg argue that the Plaintiff's Breach of Fiduciary Duty and Civil Conspiracy claims against them should be dismissed pursuant to Pennsylvania's "gist of the action" doctrine. (Def. H & K's Brief, p. 10). The gist of the action doctrine bars a tort claim where the claim is essentially "a claim against the party for breach of its contractual obligations." *Bruno v. Erie Ins. Co*., 630 Pa. 79, 106 A. 3d 48, 53 (Pa. 2014). To determine whether the gist of the action is a breach of contract or a tort, courts look to the nature of the defendant's purported duty. *See Sales Benchmark Index LLC v. DeRosa*, No. 18-2680, 2018 WL 3918090, at *4 (E.D. Pa. Aug. 2018) (citing *Bruno*, 106 A.3d at 63). Where the duty is defined by a contract and the dispute is about whether a defendant did something they were contractually required to do, the plaintiff is limited to contractual damages. *See SEI Invs. Glob. Funds Servs. v. Citibank, N.A.*, 100 F. Supp. 3d 447, 453 (E.D. Pa. 2015). Alternatively, if the duty arises out of a "broader social duty owed to all individuals, which is imposed by the law of torts and, hence exists, regardless of the contract," then a cause of action sounding in tort is appropriate. *Bruno*, 106 A.3d at 68–69.

A breach of fiduciary duty claim is subject to dismissal under this doctrine if they are "grounded in contractual obligations*." Odgers v. USAA Cas. Ins. Co.*, 689 F. Supp. 3d 50, 55 (E.D. Pa. 2023) (dismissing breach of fiduciary duty claim). And subsequentially, because a "civil conspiracy [claim] may not exist without an underlying tort," dismissal of the breach of fiduciary claim would result in dismissal of the civil conspiracy claim. *Boyanowski v. Cap. Area*

*Intermediate Unit,* 215 F.3d 396, 405 (3d Cir. 2000) ("[W]e are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct."); *see also Cunningham Lindsey U.S., Inc. v. Bonnani*, No. 13-2528, 2014 WL 1612632, at *8 (M.D. Pa. Apr. 22, 2014) ("Courts within this Circuit routinely dismiss civil conspiracy claims when the underlying tort claim is barred by the gist of the action doctrine.").

Here, Plaintiff pleads in the FAC that the Defendants owed it a duty separate from any contract. Plaintiff claims that Defendant Holland & Knight owed it a fiduciary duty "as the law firm representing it," and the individual Defendants owed it fiduciary duties "as attorneys employed by Holland & Knight." (FAC ¶¶ 104-105). Defendants contend that the "Engagement Letter and Terms of Engagement cover the subject of the alleged breaches of fiduciary duty," thus requiring the dismissal of the tort claims. (Def H&K's Brief, p. 12). However, separate from these contracts, "an attorney owes a fiduciary duty to [their] client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 253 (1992). The same is true of a law firm to its client. *See, e.g., Kirschner v. K & L Gates LLP*, 46 A.3d 737, 750 (Pa. Super. Ct. 2012). The FAC invokes these duties in their pleadings for the breach of fiduciary duty claim. (FAC ¶¶ 104-105).

Generally, "claims for breach of fiduciary duty are not barred if the fiduciary duty at issue goes beyond the particular obligations contained in the parties' contract." *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 234 (E.D. Pa. 2017). That is the case here. The gravamen of Plaintiff's allegations is that the Defendants failed to act in Plaintiff's best interest when their files were allegedly accessed. While the Terms of Engagement touch upon the subject of confidentiality, outlining that that Defendants are "required to hold confidential all

information relating to the representation of [their] clients," the Terms clearly acknowledge that this requirement is "a matter of professional responsibility." (Terms, p. 1). In fact, just before the Terms highlight this requirement, the Terms indicate that the obligations described in the "Confidentiality and Related Matters" section do not flow from the contract, but instead arise some fiduciary duty: "Regarding the ethics of our profession that will govern our representation, several points deserve emphasis." (Terms, p. 1). As in this case, when "the contract creates a relationship that in turn implies a common-law duty, the contract is collateral to that common-law duty, and the gist-of-the-action doctrine does not apply." *Bert Co. v. Turk*, 257 A.3d 93, 110 (Pa. Super. Ct. 2021), *aff'd*, 298 A.3d 44 (Pa. 2023). Because the Terms of Engagement only explain that Holland & Knight "will follow applicable legal ethics rules," instead of creating such obligations, the gist of the action doctrine is not applicable here. And even if the Terms of Engagement did create these confidentiality obligations, or allow access to the files through their "Knowledge Management Tool," the alleged breach would go beyond the contract because Plaintiff contends that their files were accessed after Holland & Knight terminated their representation. (FAC ¶¶ 31, 37). Accordingly, the gist of the action doctrine is not a basis to dismiss Plaintiff's claims.

       **ii.** *Cognizable Injury*

Defendants Holland & Knight, Donohue, and Berg contend that Plaintiff's state claims should be dismissed because Plaintiff did not suffer a cognizable harm caused by these Defendants' accused actions.[2] (Def. H&K's Brief, p. 7-10). Plaintiff's claims under Pennsylvania

---

[2] Defendants make this argument with respect to all of Plaintiff's claims, including their federal claims. (Def. H&K's Brief, p. 7). This Court only addresses this argument with respect to the state claims because the federal claims are dismissed on separate grounds outlined by the Court above.

law require a demonstration of an injury. *See Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023) (injury required for breach of fiduciary duty claim); *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (legal damages required for civil conspiracy); *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (2016) (damages required for breach of contract claim).

As mentioned, Plaintiff alleges that Defendants McCabe, Donohue, and Berg's unauthorized access to their files, and Defendant Holland & Knight's failure to protect said files, caused Plaintiff the following harms: (1) substantial costs from obtaining cybersecurity insurance; (2) loss of the "commercial value" that Plaintiff's files derive from their confidentiality; and (3) reputational damages. This Court's review of these injuries below finds that these are not cognizable injuries under Pennsylvania law.

First, Plaintiff claims that following Defendants' alleged actions, they obtained cybersecurity insurance, which allegedly received higher premiums after Plaintiff revealed said actions to their carrier. This insurance would presumably protect Fritz Bianculli from financial harms stemming from a future cybersecurity breach in their system. However, courts applying Pennsylvania law have found that insurance premium increases are not recoverable damages. *See, e.g, Krauss v. IRIS USA, Inc.*, No. 17-778, 2019 WL 2268975, at *6 (E.D. Pa. May 24, 2019) ("[I]ncreased insurance premiums are too remote… 'insurance premium increases result from a concurrence of circumstances, including the owner's prior loss experience and the internal financial practices of the particular insurance carrier.'") (citing *Whirley Indus., Inc. v. Sequel*, 462 A.2d 800, 804 (Pa. Super. Ct. 1983)); *Barger Const. Inc. v. All. Elec. Inc.*, 34 Pa. D. & C.4th 481, 485 (Com. Pl. 1996) ("[B]ecause insurance premium increases result from a concurrence of many circumstances, the economic harm is too remote from the cause in fact to be attributable to

[the defendant].") And even if one could recover insurance premium increases, it would be Defendant McCabe, whom Plaintiff alleges accessed their email system through Kristy McCabe's computer, that would be liable. Plaintiff's allegations against Defendant Holland & Knight, Donohue, and Berg involve their alleged unauthorized access of Fritz Bianculli's files on the Holland & Knight system, not Fritz Bianculli's system. Plaintiff's insurance, and their premium increases, are not cognizable because they are not attributable to Defendants Holland & Knight, Donohue, and Berg.

Next, Plaintiff's attempt to recover damages from the loss of the inherent value of the confidentiality of their files and for the impact to their reputation fail because they are too speculative. According to Plaintiff, the alleged disruption of their files' confidentiality will impact the trust of potential clients. Similarly, they claim Defendant's conduct caused them reputational damages. However, the FAC does not allege that anyone knew of the alleged breach, including any current or potential clients. As such, these injures appear too speculative to be recoverable under Pennsylvania law. *See Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 866 (Pa. 1988) ("As a general rule, damages are not recoverable if they are too speculative, vague or contingent…"); *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super. 2007) ("[t]he test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages.... Thus, damages are speculative only if the uncertainty concerns the fact of damages rather than the amount."); *Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253, 265 (3d Cir. 1995) ("Under Pennsylvania law, speculative damages may not be awarded. Damages are considered speculative if 'the uncertainty concerns the fact of damages, not the amount.'").

Because there is no cognizable injury under Pennsylvania law that is caused by Defendants Holland & Knight, Donohue, and Berg, the Breach of Contract claim (Count II) and the Civil Conspiracy claim (Count V) against them are dismissed without prejudice.[3] The Breach of Fiduciary claim, on the other hand, will not dismissed because the facts of this case trigger an exception to the requirement of an injury, which is explained below.

### iii.    *Breach of Fiduciary Duty*

Plaintiff alleges that Defendants breached their fiduciary duty. To prove a claim for breach of fiduciary duty under Pennsylvania law, a plaintiff must demonstrate the following: (1) "the existence of a fiduciary relationship between the plaintiff and the defendant;" (2) "that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit;" and (3) "that the plaintiff suffered an injury caused by the defendant's breach of its fiduciary duty." *Marion*, 288 A.3d at 88 (cleaned up). With respect to the third prong, "[p]roximate cause is an element of [this] claim." *Lemons v. Meguerian*, No. 23-1090, 2024 WL 1328311, at *2 (3d Cir. Mar. 28, 2024). Defendants challenge whether Plaintiff has sufficiently pled facts to satisfy the third prong. (Def. McCabe's Brief, p. 6; Def. H & K's Brief, p. 8). Specifically, Defendant McCabe contends that Plaintiff has not demonstrated that the information he allegedly accessed "was used in a manner that harmed Plaintiff." (Def. McCabe's Brief, p. 7). And as previously analyzed, Defendants Holland & Knight, Donohue, and Berg argue that Plaintiff "did not suffer any cognizable harm." (Def. H &K's Brief, p. 8).[4]

---

[3] Under this basis, the Civil Conspiracy claim (Count V) would be dismissed without prejudice, but the Court later finds that there is a basis to dismiss with prejudice. That basis to dismiss with prejudice dominates.

[4] Defendants Donohue and Berg also argue that "Fritz Bianculli cannot state [Breach of Fiduciary Duty] claims against employees who engaged in permitted conduct." (Def. H & K's Brief, p. 13). However, as noted above, it is unclear whether Defendant Donohue and Berg's access into Fritz Bianculli's files after Fritz Bianculli's representation was terminated can still be

Aside from the alleged injuries that this Court has already found are not cognizable, Plaintiff highlights in their responsive briefing that "under Pennsylvania law, it does not need to show a separate injury, apart from the fiduciary breach, to be entitled to disgorgement." (Pl.'s Resp. Brief to H & K Defs., ECF No. 23-1, p. 14-15) (citing *Avco Corporation v. Turner*, No. 21-2750, 2022 WL 2901015, at *2 (3d Cir. July 22, 2022)). "Generally, disgorgement is a form of '[r]estitution measured by the defendant's wrongful gain.'" *Kokesh v. S.E.C.*, 581 U.S. 455, 458–59 (2017) (citing Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment *a,* p. 204 (2010) (Restatement (Third)). In *Maritrans*, the Pennsylvania Supreme Court noted that "[c]ourts throughout the country have ordered the disgorgement of fees paid or the forfeiture of fees owed to attorneys who have breached their fiduciary duties to their clients by engaging in impermissible conflicts of interests." 529 Pa. at 258. The Third Circuit, in *Avco Corporation*, understood the Pennsylvania Supreme Court's observation in *Maritrans* as "persuasive evidence of how the Court would rule on damages," leading the Third Circuit to hold that a "client need not show injury beyond the breach of fiduciary duty itself." 2022 WL 2901015, at *2.

Defendants argue that the cases that Plaintiff presented to support their claim for disgorgement, *Avco* and *Maritrans*, are not applicable here because they involve the representation of another client. (Def. McCabe's Reply Brief, ECF No. 26, p. 2; Def. H & K's Reply Brief, ECF No. 27, p. 8). While Defendants accurately characterizes the context in which those cases were decided, that context does not limit the scope of when disgorgement is appropriate. To the contrary, the only qualification that *Maritrans* describes for ordering disgorgement in a breach of fiduciary claim against an attorney is when said attorney engages in

considered "permitted." As such, this argument does not persuade this Court to dismiss this claim.

"impermissible conflicts of interests." 529 Pa. at 258. Similarly, *Avco's* holding on disgorgement does not require that the "conflict of interest" must involve the representation of another client. *See* 2022 WL 2901015, at *2. Further, this Court has not found, nor has Defendants provided, separate case law to support Defendants' narrow interpretation of when disgorgement can be ordered in breach of fiduciary claims against attorneys. As such, Plaintiff has sufficiently pled their Breach of Fiduciary Duty Claim against Defendants.

### iv.    Civil Conspiracy

Plaintiff alleges that Defendants "conspired to deceive [Fritz Bianculli] into thinking that their confidentiality materials would not be accessed by unauthorized persons." (FAC ¶ 172). Under Pennsylvania law, the elements of a civil conspiracy claim include the following: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003). In addition to these elements, "[p]roof of malice is an essential part of a cause of action for conspiracy," *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004), and "malice requires that the conspirators act with the sole purpose of injuring the plaintiff." *Sarpolis v. Tereshko*, 625 F. App'x 594, 601 (3d Cir. 2016); *see also N. Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 713 (E.D. Pa. 2021) (collecting cases). As such, "[t]he mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Goldstein,* 854 A.2d at 590.

Here, the FAC fails to sufficiently plead a civil conspiracy claim because Fritz Bianculli has not alleged that the Defendants had the sole intent to injure Fritz Bianculli. The FAC alleges

that "Defendant McCabe purposely accessed this sensitive and confidential information with the intent of (i) obtaining some sort of information to financially, reputationally, or otherwise harm Brian Fritz **and/or** Fritz and Bianculli, **and** (ii) using such information against Kristy McCabe in ongoing divorce proceedings." (FAC ¶ 69) (emphasis added). Neither Brian Fritz nor Kristy McCabe are plaintiffs, so Defendants' alleged intent to injure them would not support Fritz Bianculli's civil conspiracy claim. Instead, Defendants alleged intent to injure Brian Fritz and Kristy McCabe indicates that they did not have the sole intent to injure Fritz Bianculli. Therefore, this claim must be dismissed with prejudice against Defendants. *See Manco v. St. Joseph's Univ.*, No. 22-285, 2024 WL 299265, at *20 (E.D. Pa. Jan. 25, 2024) ("Manco has entirely failed to plead that any of the defendants acted with the sole intent to injure or harm him. Accordingly, this claim must be dismissed.").

## V.      CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted in part and denied in part.

The Court holds the following: (1) Count III (CFAA) is dismissed without prejudice and Count V (Civil Conspiracy) is dismissed with prejudice against Defendant Patrick McCabe; (2) Counts III (CFAA), IV (SCA), and V (Civil Conspiracy) are dismissed with prejudice and Count II (Breach of Contract) is dismissed without prejudice against Defendant Holland and Knight, LLP; and (3) Count IV (SCA) and V (Civil Conspiracy) are dismissed with prejudice and Count III (CFAA) is dismissed without prejudice against Defendants Jean Donohue and Eric Berg.

Accordingly, the following claims remain: (1) Count I (Breach of Fiduciary Duty) against all Defendants; and (2) Count IV (SCA) against Defendant Patrick McCabe.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**